# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 07-CV-4373 (JFB)

CHRISTOPHER DELSTON,

Petitioner,

VERSUS

PEOPLE OF THE STATE OF NEW YORK,

Respondent.

**MEMORANDUM AND ORDER**
July 29, 2010

JOSEPH F. BIANCO, District Judge:

Christopher Delston (hereinafter "Delston" or "petitioner") petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, to vacate his conviction entered on June 22, 2004 in the County Court of the State of New York, County of Nassau (the "trial court" or "County Court"), for criminal sale of a controlled substance in the third degree (N.Y. Penal Law § 220.39[1]), criminal possession of a controlled substance in the third degree (N.Y. Penal Law § 220.16[1]), and criminal possession of a controlled substance in the fifth degree (N.Y. Penal Law § 220.06[5]).[1] Petitioner was sentenced, as a second felony offender, to concurrent indeterminate terms of imprisonment, the greatest of which was eight to sixteen years. On February 8, 2010,

---

[1] Given that petitioner is on probation, the proper respondent is "the particular probation or parole officer responsible for supervising the applicant, and the official in charge of the parole or probation agency, or the state correctional agency, as appropriate." Rules Governing § 2254 Cases, Rule 2, 28 U.S.C. foll. § 2254 advisory committee's note (1976 adopt.); *see also Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 894 (9th Cir. 1996). Thus, the current-named respondent, People of the State of New York, is incorrect. Instead, the Court will construe the petition as asserting a claim against the Director of the Nassau County Department of Probation. *See generally* Nassau County Probation Department, h t t p : / / www.nassaucountyny.gov/agencies/Probation/index.html (last visited July 26, 2010) (explaining that department has responsibility for supervising criminal defendants sentenced to probation).

petitioner was resentenced pursuant to the 2009 Drug Law Reform Act to a determinate sentence of eight years' imprisonment to be followed by three years of post-release supervision. On March 3, 2010, petitioner was granted a conditional release to parole.

Petitioner challenges his conviction on the following grounds: (1) the hearing court erred in finding probable cause for his arrest; (2) the sentence imposed by the court was excessive because he was improperly sentenced as a second felony offender without a hearing; (3) the trial court erred in allowing extensive testimony about the typical practices of drug dealers; and (4) the evidence was insufficient to support petitioner's conviction, and the verdict was against the weight of the evidence.

For the reasons set forth below, petitioner's request for a writ of habeas corpus is denied in its entirety.

I. BACKGROUND

The Court has adduced the facts below from the instant petition and the state court record in this case.

A. The Underlying Facts

1. Evidence Presented by the Prosecution

On November 19, 2002, confidential informant Denise Bussey worked with detectives from the Nassau County Police Department Narcotics Bureau to make a drug buy. (Tr. 205-09, 266-69, 287, 343-46.) Prior to the buy, Bussey was searched by Nassau County Police Officer Carol Trimboli to ensure that Bussey was not carrying any money, drugs, or other contraband, and was then outfitted with a hidden audio transmitter and hidden video recorder, and given $40 with which to attempt to buy drugs. (Tr. 206-07, 267-68, 289-90, 343-44.) After she was searched, wired, and given money, Bussey went into the deli. (Tr. 206-07.)

Detective Roy Mangiamele put the audio and video equipment on Bussey and monitored the equipment thereafter. (Tr. 288-90.) Detective James Browne and Officer Carol Trimboli were also working with Bussey. (Tr. 289.) While Bussey was in the deli, the audio transmitter she wore transmitted to an audio receiver in the officers' vehicle, allowing the officers to hear what was going on. (Tr. 291.)

After entering the deli, Bussey spent $1 on two cigarettes. She next saw petitioner and told him that she was short one dollar and wanted something for $39. Bussey then passed petitioner the money, and he passed her the drugs. (Tr. 208.) The transaction was captured on videotape. (Tr. 212-16.)

After petitioner sold Bussey the drugs, she left the store and returned to the McDonald's parking lot where the detectives were. Bussey handed the drugs to the narcotics officers. (Tr. 209.) She gave Detective Mangiamele two clear plastic Ziploc bags that contained a white rock-like substance and two cigarettes. (Tr. 292.) Delston was not arrested at that time.

On December 2, 2002, Bussey saw petitioner at a bar called C'est La Vie. When Bussey saw petitioner, she called the detectives and informed them that he was inside the bar. (Tr. 216.) Detective Mangiamele and Detective Browne traveled to the C'est La Vie Bar to place petitioner under arrest for the previous sale that occurred on November 19, 2002. The detectives

2

walked into the bar, and Detective Mangiamele identified himself as a Nassau County police officer. The officers walked up to petitioner and told him he was under arrest for the sale of drugs on November 19, 2002. As Detective Mangiamele was doing so, he saw petitioner's right hand coming up from his side. Detective Mangiamele grabbed petitioner's right side, and Detective Browne grabbed petitioner's left side; petitioner was then handcuffed. Detective Mangiamele recovered eight small red-tinted Ziploc bags, which each contained what appeared to be crack cocaine, from petitioner's right hand. (Tr. 295-96.)

The substance recovered from petitioner's hand on December 2, 2002 was invoiced and sent to the Scientific Investigation Bureau lab for analysis. (Tr. 296.) On December 10, 2002, Detective Jayson Pinksy conducted a three-part analysis of the two clear plastic Ziploc bags of drugs Bussey purchased from petitioner on November 19, 2002 and determined that the substance was in fact cocaine. (Tr. 324-36.) On December 11, 2002, Detective Marc Timpano weighed the contents of the eight small Ziploc bags recovered from petitioner when he was arrested on December 2, 2002. Detective Timpano then performed three tests, all of which gave a positive indication for the presence of crack cocaine. (Tr. 333-35.) Detective Timpano determined that the bags contained 1,265 milligrams of pure cocaine. (Tr. 337.)

2. Evidence Presented by the Defense

The defense did not present its own case at trial. Instead, it appears that the defense's primary trial strategy was to discredit Bussey's testimony on cross-examination. For example, at trial, Bussey testified that the only conversation between her and petitioner on November 19, 2002 was that she said "I'm only short a dollar," and "What's up, sweetheart," to which petitioner responded "What's up, baby." However, on June 10, 2003, Bussey had testified to the grand jury that she and petitioner had the following conversation:

> Bussey: I asked him for two 20s.
>
> Counsel: What was his response?
>
> Bussey: He said to hold on. I bought two cigarettes for the dollar and I met him at the freezer and he gave—he gave me two 20s and I paid him $39.

(Tr. 257-58.) When she was cross-examined at trial, Bussey admitted that she was asked those questions and gave those answers to the grand jury, but at the time she did not realize what she was saying; she did not remember what transpired until she saw the video. (*Id.*) Defense counsel also attempted to discredit Bussey as a witness by asking her about her criminal history, which included numerous charges of assault, violating orders of protection, prostitution, menacing, criminal mischief with intent to damage property, criminal sale and possession of a controlled substance (crack cocaine), bail jumping, petit larceny, obstruction of justice, burglary, and violating a court order. (Tr. 217-33.)

B. Procedural History

1. The Suppression Hearing

Delston was indicted for criminal sale of a controlled substance in the third degree (N.Y. Penal Law § 220.39[1]), criminal possession of a controlled substance in the third degree (N.Y. Penal Law § 220.16[1]),

and criminal possession of a controlled substance in the fifth degree (N.Y. Penal Law § 220.06[5]). Prior to the trial, Delston claimed that he was unlawfully arrested and moved for the suppression of the evidence and statements obtained from the allegedly unlawful arrest. (*Mapp* Hearing (hereinafter "H.") 35-36.) The County Court of the State of New York, County of Nassau, conducted a hearing on October 27, 2003 to determine whether Delston was arrested pursuant to probable cause. Following the hearing, the Court denied Delston's suppression motion and found that, as a matter of law, the police had probable cause to arrest Delston and the evidence seized at the time of his arrest was obtained lawfully. (H. 40.)

2. Conviction and Direct Appeal

On June 22, 2004, a jury found Delston guilty of criminal sale of a controlled substance in the third degree (N.Y. Penal Law § 220.39[1]), criminal possession of a controlled substance in the third degree (N.Y. Penal Law § 220.16[1]), and criminal possession of a controlled substance in the fifth degree (N.Y. Penal Law § 220.06[5]). Delston was sentenced on February 25, 2004 as a second felony offender to an indeterminate term of imprisonment, the maximum of such sentence to be sixteen years, and the minimum of such sentence to be eight years on Count One; sixteen years maximum and eight years minimum on Count Two; and an indeterminate sentence of two to four years on Count Three, all to run concurrently. (Sentencing Transcript ("S.") 4-5.) The sentencing court further imposed a mandatory surcharge of $200, a $10 Crime Victim Assistance Fee, a $40 D.N.A. surcharge, and suspended Delston's license and driving privileges for six months. (S. 5-6.)

Delston appealed his conviction to the New York Supreme Court, Appellate Division, Second Department (hereinafter "Appellate Division") on the following grounds: (1) the hearing court abused its discretion when it determined that there was probable cause for Delston's arrest; (2) the sentence imposed by the trial court was harsh and excessive, and Delston was improperly sentenced as a second felony offender; (3) the trial court abused its discretion when it allowed extensive testimony about the typical practices of drug dealers; and (4) the evidence at trial was legally insufficient to convict Delston, and the verdict was against the weight of the evidence. The Appellate Division affirmed the conviction on June 13, 2006. *People v. Delston*, 818 N.Y.S.2d 223, 223 (App. Div. 2006).

Delston then filed an application with the New York Court of Appeals for leave to appeal the Appellate Division's order on all grounds. On August 25, 2006, the Court of Appeals denied Delston leave to appeal. *People v. Delston*, 855 N.E.2d 802, 802 (N.Y. 2006).

Delston then filed a post-judgment motion pursuant to New York Criminal Procedure Law article 440. Delston, proceeding *pro se*, asked the County Court, Nassau County, to vacate the judgment against him on five grounds. Delston claimed that the confidential informant and one of the police officers offered perjured testimony against him, that the evidence at trial was not legally sufficient to support his conviction, and that he did not receive effective assistance of counsel from his trial counsel. He also claimed that he was inappropriately sentenced as a second felony offender. In an order dated June 27, 2007, the County Court denied Delston's motion in all respects. *People v.*

*Delston*, Ind. No. 1424N03 (County Ct., Nassau County June 27, 2007).

On or about August 15, 2007, Delston sought leave to appeal to the Appellate Division from the denial of his motion, raising the same grounds he raised before the County Court. The Appellate Division denied Delston permission to appeal from the County Court's decision on all issues except those from the portion of the court's order relating to the sentencing claim. In October 2008, Delston appealed the denial of his 440 motion, arguing that the County Court erred when it adjudicated him a second felony offender based on another conviction from a different jurisdiction without first determining whether the elements of the predicate offense were the same as the equivalent crime in New York. (*See* Delston's App. Div. Brief – 440, Docket Entry [22-13].) On May 6, 2009, the Appellate Division affirmed the decision of the County Court. *People v. Delston*, 878 N.Y.S.2d 912, 912 (App. Div. 2009). On October 16, 2009, Delston was denied leave to appeal to the New York State Court of Appeals. *People v. Delston*, 13 N.Y.3d 835, 835 (2009).

### 3. Resentencing

In October 2009, Delston moved to be resentenced pursuant to the 2009 Drug Law Reform Act (hereinafter "DLRA"). In relevant part, the 2009 DLRA provides:

> Any person in the custody of the department of correctional services convicted of a class B felony offense defined in article two hundred twenty of the penal law which was committed prior to January thirteenth, two thousand five, who is serving an indeterminate sentence with a maximum term of more than three years, may, except as provided in subdivision five of this section, upon notice to the appropriate district attorney, apply to be resentenced to a determinate sentence in accordance with sections 60.04 and 70.70 of the penal law in the courts which imposed the sentence.

2009 Drug Law Reform Act, N.Y. Crim. Proc. Law § 440.46(1) (2009).

On December 11, 2009, the County Court granted petitioner's motion for an order seeking to be resentenced. On February 8, 2010, petitioner was resentenced to a determinate sentence of eight-years' imprisonment to be followed by three years of post-release supervision. On March 3, 2010, petitioner was granted a conditional release to parole.

### 4. The Instant Petition

On October 2, 2007, Delston, proceeding *pro se*, filed his petition for a writ of habeas corpus in the Southern District of New York. On that date, a transfer order was issued, transferring the petition to this Court because petitioner was challenging a judgment of conviction that was issued in Nassau County, which is located in the Eastern District of New York. (*See* Transfer Order, Docket Entry [4-3].) On November 28, 2007, respondent moved, pursuant to 28 U.S.C. § 2254(b)(1)(A) and 28 U.S.C. § 2254(c), to dismiss petitioner's application for a writ of habeas corpus on the ground that the application was a "mixed petition" that contained both exhausted and unexhausted claims. Specifically, respondent noted that petitioner had yet to perfect the appeal of the denial of his post-judgment motion on the

5

ground that he was improperly sentenced as a second felony offender. On July 15, 2008, Delston moved for this Court to stay his petition pending resolution of state matters. By Order dated August 21, 2008, this Court granted Delston's motion and stayed his petition to allow him to exhaust his unexhausted claim in the state courts. By letter dated January 19, 2010, petitioner informed the Court that he had exhausted his claim and enclosed the New York Court of Appeals' decision denying leave to appeal.

Petitioner raises the same claims he raised on appeal in the New York state courts. Specifically, he argues: (1) the hearing court abused its discretion when it determined that there was probable cause to arrest him; (2) the sentence imposed on him was excessive, and he was improperly sentenced as a second felony offender without a hearing; (3) the court abused its discretion when it allowed extensive testimony about the typical practices of drug dealers; and (4) the evidence at trial was legally insufficient to convict defendant and the verdict was against the weight of the evidence. Respondent filed an opposition brief and affidavit on March 26, 2010. This matter is fully submitted.

II. STANDARD OF REVIEW

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2554. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id*.

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006).

III. DISCUSSION

A. Procedural Bar

A petitioner's federal claims may be procedurally barred from habeas corpus review if they were decided at the state level on "adequate and independent" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729-33 (1991). The procedural rule at issue is adequate if it is "firmly established and regularly followed by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999). To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case," *Harris v. Reed*, 489 U.S. 255, 261-62 (1989), by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." *Id.* at 263 (internal quotations omitted). If it determines that a claim is procedurally barred, a federal habeas court may not review the claim on the merits unless the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Coleman*, 501 U.S. at 750 (citations omitted). A miscarriage of justice is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Here, petitioner's second claim, that he was improperly sentenced as a second felony offender, is procedurally defaulted. In reviewing this claim on direct appeal, the Appellate Division stated that petitioner "failed to preserve this claim for appellate review since he did not contest or controvert his status as a second felony offender when he had the opportunity to do so at the sentencing hearing." *Delston*, 818 N.Y.S.2d at 223.[2] A failure to preserve an issue for state appellate review is clearly an adequate and independent state procedural ground that will preclude federal habeas review of the issue. *See Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996) (finding that failure to preserve issue for appeal was adequate and independent state law ground precluding federal habeas review); *see also Fernandez v. Leonardo*, 931 F.2d 214, 216 (2d Cir. 1991). Moreover, petitioner has demonstrated neither cause nor prejudice for his procedural default. Petitioner also makes no claim of actual innocence. *See House v. Bell*, 547 U.S. 518, 536-40 (2006). Thus, the Court concludes that petitioner has

---

[2] When given an opportunity to admit, deny, or stand mute regarding the allegations in the People's information, the document in which the People detailed his prior conviction, Delston told the court that he stood mute. (S. 2.)

failed to show cause for the default, prejudice resulting therefrom, or a miscarriage of justice. Accordingly, petitioner's claim regarding his improper sentencing is procedurally barred from review. Nevertheless, in an abundance of caution, the Court has reviewed the merits of all petitioner's claims below, including the procedurally defaulted claim, and finds that none of them warrant habeas relief.

B. Review on the Merits

1. Probable Cause Claim

Petitioner argues that he is entitled to habeas relief because the police did not have probable cause to arrest him for possession and sale of crack cocaine. The Court disagrees. As set forth below, the Court cannot grant relief on this ground because petitioner had a full and fair opportunity to litigate this Fourth Amendment claim in state court. In any event, even if the Court could review the underlying merits of this Fourth Amendment claim, petitioner's claim fails because he has not demonstrated that the state court ruling was contrary to, or involved an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence in the record.

It is well-settled that "[w]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). The Second Circuit has further explained that, under *Powell*, "review of fourth amendment claims in habeas petitions would be undertaken in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 2002) (citing *Gates v. Henderson*, 568 F.2d 830, 839 (2d Cir. 1977) (en banc)). Courts have viewed such a breakdown to occur when the state court "failed to conduct a reasoned method of inquiry into the relevant questions of fact and law." *Capellan*, 975 F.2d at 71 (citations and quotations omitted).

With respect to the existence of corrective procedures, it is clear that New York has adequate corrective procedures, which are set forth in New York Criminal Procedure Law § 710.10, *et seq.*, for litigating Fourth Amendment claims. *See, e.g.*, *Capellan*, 975 F.2d at 70 n.1 ("[T]he 'federal courts have approved New York's procedure for litigating Fourth Amendment claims . . . as being facially adequate.'" (quoting *Holmes v. Scully*, 706 F. Supp. 195, 201 (E.D.N.Y. 1989))). Moreover, in the instant case, there is absolutely no evidence of an unconscionable breakdown in the underlying process. To the contrary, after petitioner filed his motion to suppress, the trial court conducted a pre-trial evidentiary hearing. After the hearing, the court issued an oral decision finding that the police had probable cause to arrest petitioner for possession and sale of crack cocaine and that the evidence was obtained and seized lawfully at the time of the arrest. (H. 38-40.) Petitioner also raised his Fourth Amendment claim on appeal to the Appellate Division, which found the claim to be without merit. *Delston*, 818 N.Y.S.2d at 223. Thus, the record reveals no "'disruption or obstruction

8

of a state proceeding' typifying an unconscionable breakdown," *Capellan*, 975 F.2d at 70 (quoting *Shaw v. Scully*, 654 F. Supp. 859, 864 (S.D.N.Y. 1987)); rather, the record clearly establishes that the state court conducted a reasoned and thorough method of inquiry into the relevant facts. In short, having fully availed himself of New York's corrective procedures regarding his Fourth Amendment claim, petitioner has had an opportunity for full and fair litigation of the claim and may not raise it on federal habeas review. *See, e.g.*, *Garcia v. Artus*, No. 08-CV-1423 (JFB), 2010 WL 1816333, at *5-6 (E.D.N.Y. May 5, 2010); *Garrett v. Smith*, No. 05-cv-3374(JFB), 2006 WL 2265094, at *8 (E.D.N.Y. Aug. 8, 2006).

As set forth above, the Court cannot grant relief on the petitioner's Fourth Amendment claim because petitioner had a full and fair opportunity to litigate the claim in state court. However, even assuming that the Court could review the underlying merits of this claim, the claim fails on the merits.

Prior to petitioner's trial, the state court conducted a *Mapp* hearing at which the trial judge determined that there was probable cause to arrest Delston, and the Appellate Division rejected Delston's Fourth Amendment claim on the merits; therefore AEDPA deference applies. In particular, the state court had more than sufficient basis to find probable cause to arrest petitioner based on: (1) testimony given by a veteran detective, and (2) audio and video capturing the entire drug transaction. Specifically, the state court judge credited the testimony of the People's witness at the *Mapp* hearing, Nassau County Narcotics Detective Roy Mangiamele. (H. 38.) The judge found that audio and video evidence supported the factual basis for the arrest: namely, that on November 19, 2002, Delston was in possession of and sold two bags of a substance that appeared to be crack cocaine to a confidential informant working for the Nassau County Police Department, Department of Narcotics Bureau. (*Id.*) The judge further found that Delston was paid $39 by the confidential informant for the bags of crack. (*Id.* at 39.) The *Mapp* hearing judge emphasized that Detective Mangiamele's determination that there was probable cause to arrest Delston was based on his training and professional experience and involvement in over one-thousand arrests for crack cocaine. (*Id.*) Moreover, the hearing judge found that while, the police were arresting Delston on December 2, 2002, Detective Mangiamele observed Delston holding in his right hand eight plastic bags containing a substance that Mangiamele believed to be crack cocaine. (*Id.* at 39-40.) These items were seized by Mangiamele and sent for testing to the Police Department's Scientific Investigation Bureau. (*Id.* at 40.)

Based upon these findings of fact, the hearing judge determined that there was probable cause to arrest Delston on December 2, 2002, and that the bags of cocaine seized during the arrest were obtained lawfully. (*Id.*) On appeal, the Appellate Division determined that Delston's claim that the police lacked probable cause was "without merit." *Delston*, 818 N.Y.S.2d at 223.

Based upon the facts presented at the hearing, there is nothing in the record to indicate that the state court judge's or the Appellate Division's ruling that the police had probable cause to arrest petitioner was contrary to, or an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence presented in the state court hearing. Accordingly, even if this Court

could review petitioner's Fourth Amendment claim on the merits, the Court concludes that the claim is without merit, and habeas relief on this ground is denied.

2. Harsh and Excessive Punishment

Petitioner contends that the sentence imposed on him for the crimes he was convicted of was excessive and, therefore, cruel and unusual punishment. Specifically, petitioner claims that he was improperly sentenced as a second felony offender. The Appellate Division rejected petitioner's harsh and excessive sentence claim, finding that his claim that he was improperly sentenced as a second felony offender was unpreserved and that the sentence imposed was not excessive. *Delston*, 818 N.Y.S.2d at 223. Therefore, AEDPA deference applies. The Court concludes that the Appellate Division's determination that petitioner's sentence was not harsh and excessive was not contrary to, nor an unreasonable application of, clearly established federal law.

As a threshold matter, to the extent that petitioner relies on state law as a ground for an excessive sentence claim, such a claim is not cognizable on habeas review. *See, e.g.*, *Wilson v. Ercole*, No. 06-cv-533 (DLI), 2009 U.S. Dist. LEXIS 23447, at *30-31 (E.D.N.Y. Mar. 23, 2009) ("On this direct appeal, petitioner . . . did not contend that this sentence violated his constitutional rights, but instead urged the Appellate Division to reduce the sentence under C.P.L. § 470.15(6)(b), which gives the state court broad plenary power to modify a sentence that is unduly harsh or severe, though legal. . . . Given that this claim rests exclusively on state law, the court may not review it under 28 U.S.C. § 2254(d)." (internal citations omitted)); *Morris v. Kuhlmann*, No. 84 Civ. 2293, 1984 U.S. Dist. LEXIS 14863, at *4 (S.D.N.Y. July 18, 1984) ("The question of using a Canadian conviction as a basis for sentencing as a second felony offender is a matter of state law and does not present a federal question suitable for federal habeas corpus review.").. Indeed, for the purpose of habeas review, "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *see also Santiago v. Riley*, 92-cv-2302 (DRH), 1993 WL 173625, at *4 (E.D.N.Y. May 14, 1993) ("Where the sentence imposed by a state trial judge is within the statutorily prescribed range, the constitution is not implicated and there is no federal question for habeas corpus review." (citation omitted)); *Underwood v. Kelly*, 692 F. Supp. 146, 152 (E.D.N.Y. 1988), *aff'd*, 875 F.2d 857 (2d Cir. 1989). Here, as discussed below, Delston's sentence was within the permissible range prescribed by New York state law, and thus no federal issue is presented.

To the extent petitioner raises a federal claim that his sentence was excessive, and therefore cruel and unusual punishment under the Eighth Amendment,[3] the Court rejects such an argument. In this case, petitioner was sentenced as a second felony offender to an indeterminate term of imprisonment of eight to sixteen years for the criminal sale of a controlled substance in the third degree, an indeterminate term of imprisonment of eight to sixteen years for criminal possession of a controlled substance in the third degree, and an indeterminate sentence of two to four years for criminal possession of a controlled substance in the fifth degree; these sentences

---

[3] Such a claim could also be federalized by claiming that petitioner's due process rights were violated by the adjudication. Under either theory, petitioner's claim fails on the merits, as discussed *infra*.

10

were to run concurrently. Such a sentence is within the range prescribed for those crimes by New York law. *See* N.Y. Penal Law § 70.06 (maximum sentence of 9-25 years, minimum sentence fixed at half the maximum sentence). As petitioner's sentence is within the statutorily prescribed range, it raises no constitutional concerns and, therefore, petitioner's sentence claim is without merit.[4]

In any event, there is no indication that petitioner was wrongfully sentenced as a second felony offender under state law. Under New York Penal Law § 70.06[1], a second felony offender is "a person, other than a second violent felony offender . . . who stands convicted of a felony . . . after having previously been subjected to one or more predicate felony convictions." New York Criminal Procedure Law § 400.21 provides that:

> [t]he defendant must be given a copy of such statement [setting forth the date of commencement and the date of termination as well as the place of imprisonment for each period of incarceration] and the court must ask him whether he wishes to controvert any allegation made therein. If the defendant wishes to controvert any allegation in the statement, he must specify the particular allegation or allegations he wishes to controvert. Uncontroverted allegations in the statement shall be deemed to have been admitted by the defendant.

N.Y. Crim. Proc. Law § 400.21(3).

Delston was properly adjudicated as a second felony offender based on his previous 1990 Florida conviction, upon a plea of guilty, for burglary and grand theft. (S. 2.) Prior to sentencing, the People submitted an information alleging the date and place of Delston's predicate felony convictions, including the 1990 Florida felony conviction, for which Delston was sentenced to ten years in prison. *People v. Delston*, Ind. No. 1424N03, slip op. at 4 (County Ct., Nassau County June 27, 2007). The People also provided the court with a copy of Delston's New York State identification sheet ("NYSID," or more commonly known as a "rap sheet"), which confirmed that Delston had a predicate felony conviction as defined in New York Penal Law § 70.06. *Id.* When given an opportunity to admit, deny, or stand mute regarding the allegations in his NYSID sheet, Delston told the court he stood mute. (*Id.*) Delston does not claim that his prior conviction was either unconstitutionally obtained or reversed. Nor has he challenged that he was, in fact, incarcerated with regard to that conviction for the time period stated in the predicate felony statement. In his 440 motion, Delston claimed that his sentence was illegal because the prosecutor did not file the requisite prior felony offender statement before the sentencing proceeding and because the sentencing court did not compare the statute on which the felony conviction was based to the comparable New York statute to

---

[4] In addition, on December 11, 2009, the County Court granted petitioner's motion for an order seeking to be resentenced, and on February 8, 2010, petitioner was resentenced to a determinate sentence of eight years imprisonment to be followed by three years of post-release supervision. This eight-year term of imprisonment was within the sentencing range that would have been applicable had Delston not been adjudicated a second felony offender at sentencing. Two of Delston's offenses were class B felonies. For non-second felony offenders "the term [of imprisonment for commission of a Class B felony] shall be at least two years and shall not exceed nine years." *See* N.Y. Penal Law § 70.70(2)(a)(i). Thus, Delston's sentencing argument also appears to be moot.

determine if the same conduct would be a felony in New York. The County Court denied Delston's motion in its entirety and held that Delston's improper sentencing claim must be rejected because the People had complied with the requirements of New York Criminal Procedure Law § 400.21. *People v. Delston*, Ind. No. 1424N03, slip op. at 4 (County Ct., Nassau County June 27, 2007). The County Court noted that, prior to sentencing, the prosecutor had filed a statement setting forth the date and place of Delston's predicate felony convictions, which included the 1990 Florida burglary conviction, for which Delston was sentenced to ten-years' imprisonment. *Id.* The "essential purpose of the predicate felony statement has been served when the prosecution has identified the prior conviction upon which it will rely in seeking a second felony offender adjudication." *People v. Sullivan*, 550 N.Y.S.2d 358, 364 (App. Div. 1990) (collecting cases). "Once the predicate felony conviction has been identified, the defendant is fully able to assert whatever reason he might have for believing that such conviction may not be used to enhance his sentence." *Id.* Delston remained mute at sentencing, and did not challenge the prior sentence. When, at sentencing, the defendant fails to raise an objection, and when, as a result, the legality of the sentence cannot be determined by this court upon the information contained in the appellate record, review as a matter of law should be denied. *Id.* Indeed, the second felony offender sentencing statute in New York provides that "[u]ncontroverted allegations in the statement shall be deemed to have been admitted by the defendant." N.Y. Crim. Proc. Law § 400.21(3). Thus, petitioner cannot now challenge the trial judge's reliance on a conviction that he did not contest at sentencing. *E.g.*, *Ennis v. Walker*, No. 00-CIV-2875 (DAB) (AJP), 2001 WL 409530, at *18 (S.D.N.Y. Apr. 6, 2001); *see also Phelps v. McLellan*, 95 Civ. 7868, 1998 WL 470511, at *1 (S.D.N.Y. Aug. 11, 1998) ("[B]ecause the judge involved in the 1985 Conviction determined that Petitioner had a predicate felony conviction by virtue of the 1981 Conviction, and because Petitioner did not contest the validity of the 1981 Conviction at the time of his sentencing at the 1985 Conviction, Petitioner is precluded from disputing the validity of the 1981 Conviction in the instant motion" arising from his later conviction); *Lawlor v. Scully*, 93 Civ. 2985, 1996 WL 641635 at *4 (S.D.N.Y. Oct. 22, 1996) (petitioner's claim that he was improperly adjudicated a persistent violent felony offender on basis of allegedly unconstitutional 1983 conviction barred from habeas review where, at 1984 sentencing, petitioner "accepted his designation as a second felony offender and expressly waived any attack on the validity of his 1983 felony conviction"). Thus, Delston waived his right to challenge the use of the prior conviction and its validity by failing to controvert the use thereof or request a hearing thereon. *See, e.g.*, *People v. Crippa*, 666 N.Y.S.2d 781, 781-82 (App. Div. 1997). In any event, petitioner has provided no evidence that the 1990 Florida felony conviction would not be a felony under comparable provisions of New York State law.

In sum, the Court finds that the Appellate Division's conclusion that petitioner's sentence was not excessive was not contrary to, nor an unreasonable application of, clearly established federal law. Therefore, petitioner's application for habeas corpus relief on this ground is denied.

### 3. Evidentiary Claim

Petitioner argues that he was denied a fair trial when the state court allowed the introduction of extensive testimony regarding

the typical practices of drug dealers. More specifically, petitioner contends that he was prejudiced by police testimony about the nature of drug transactions, the typical approach used by the police in investigating drug crimes, how drug dealers sell their product, and how the police utilize confidential informants. The Appellate Division found this claim to be without merit. *Delston*, 818 N.Y.S.2d at 223. Therefore, AEDPA deference applies. As set forth below, there is no basis to conclude that the state court's evidentiary ruling or the Appellate Division's affirmance thereof was erroneous under state law. Nor has petitioner demonstrated that the ruling, even if erroneous, rose to a constitutional level that deprived him of a fair trial. Thus, petitioner's claim does not warrant habeas relief.

It is well-settled that "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983). *See generally Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[H]abeas corpus relief does not lie for errors of state law." (citations omitted)). Instead, for a habeas petitioner to prevail in connection with a claim regarding an evidentiary error, a petitioner must "show that the error deprived her of a fundamentally fair trial." *Taylor*, 708 F.2d at 891; *see also Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) ("Even erroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner 'can show that the error deprived [him] of a fundamentally fair trial.'" (quoting *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988) (internal quotation marks omitted))). In other words, "[t]he introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" *Dunningan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal quotation marks omitted)).

To constitute a denial of due process under this standard, the erroneously admitted evidence must have been "'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" *Id.* at 125 (quoting *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992) (internal quotation marks omitted)); *see also Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985) (holding that evidence must be "crucial, critical, highly significant" (internal quotation marks omitted)). Moreover, the Court "must review the erroneously admitted evidence 'in light of the entire record before the jury.'" *Dunningan*, 137 F.3d at 125 (quoting *Johnson*, 955 F.2d at 181). In making this due process determination, the Court should engage in a two-part analysis, examining (1) whether the trial court's evidentiary ruling was erroneous under New York State law, and (2) whether the error amounted to the denial of the constitutional right to a fundamentally fair trial. *See Davis v. Strack*, 270 F.3d 111, 123-24 (2d Cir. 2001).

As a threshold matter, there is no basis to conclude that the trial court's admission of the evidence regarding the typical practices of drug dealers was erroneous under state law. Testimony concerning the general dealings of the drug trade is admissible. *See, e.g.*, *Johnson v. Mazzuca*, No. 04-cv-5246 (JFB), 2006 WL 2376383, at *5-6 (E.D.N.Y. Aug. 16, 2006) (concluding that testimony concerning procedures used in a "buy and bust" operation, the roles of various officers in such an operation, and the various roles that individuals typically occupy in a street-level

drug operation was properly admitted (collecting cases)). Appellate courts in New York have held that "allowing police officers to give background testimony to explain how so-called 'buy and bust' operations are conducted is proper for the purpose of assisting the jury in understanding the actions of the police which lead to a defendant's arrest, how the officers conduct the actual purchase, and why pre-recorded money is not always recovered." *People v. Clausell*, 636 N.Y.S.2d 823, 824 (App. Div. 1995); *accord People v. Ramos*, 627 N.Y.S.2d 411, 411 (App. Div. 1995); *People v. Hawkins*, 620 N.Y.S.2d 994, 994-95 (App. Div. 1994). Here, the testimony by the police officers was given to explain the actions taken by both the police and confidential informant and to put those actions into context. Accordingly, the trial court did not err under state law in admitting such details of the typical practices of drug dealers.

Finally, even assuming the evidence regarding the typical practices of drug dealers was erroneous under state law, there is no basis for the Court to conclude that the admission of those statements deprived petitioner of his constitutional right to a fair trial. As discussed more fully *infra*, the evidence of petitioner's guilt was overwhelming in this case based upon, among other things, unrefuted testimony and a videotape showing that a transaction took place between petitioner and the police informant. Although the drugs and money exchanged cannot be seen on the tape, petitioner did not dispute that it is clear from the tape that the informant handed something to the petitioner as he simultaneously handed something to her. Even if their hands were not visible on the tape, petitioner did not dispute that the tape showed that the informant left the police, bought two cigarettes from a deli cashier, approached petitioner, and engaged in a transaction with petitioner, after which the informant immediately returned to the police with drugs. Thus, the testimony regarding the typical practices of drug dealers was only a small part of the evidence against petitioner at trial. The prosecution also presented the uncontroverted testimony of the confidential informant, as well as testimony of the police officers who arrested Delston on December 2, 2002, as to the contents of the bags in Delston's hands when he was arrested. In short, in light of the entire record, there is nothing about the admission of this evidence, even if it were erroneous, that rendered petitioner's trial unfair.

In sum, the state court's ruling allowing the testimony regarding the nature of drug transactions was not contrary to, or an unreasonable application of, clearly established federal law. Thus, petitioner's request for a writ of habeas corpus based upon the state court's evidentiary ruling is denied.

4. Insufficiency of the Evidence Claim

Petitioner claims that the evidence presented at trial was legally insufficient to convict him of the charged crimes and that the verdict was against the weight of the evidence. For the reasons set forth below, the Court denies habeas relief for both claims.

A "weight of the evidence" claim is based on state law. *See Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles."). The Court cannot consider a purely state law claim on federal habeas review. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus

relief does not lie for errors of state law . . . ."). Therefore, to the extent petitioner raises this claim, the Court cannot review it.[5]

However, petitioner's claim that the evidence was insufficient to support his conviction does present a question of federal law. *See Einaugler v. Supreme Court of the State of N.Y.*, 109 F.3d 836, 839 (2d Cir. 1997) (stating that the Fourteenth Amendment requires "sufficient evidence for a jury to find that the prosecution proved the substantive elements of the crime as defined by state law" (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979))). As discussed below, any claim that the evidence at petitioner's trial was insufficient to support a finding of guilt beyond a reasonable doubt is without merit.

The law governing habeas relief from a state conviction based on insufficiency of the evidence is well established. A petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in an application for a writ of habeas corpus. *Id.* at 840. A criminal conviction in state court will not be reversed if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1976); *see also Policano v. Herbert*, 507 F.3d 111, 115-16 (2d Cir. 2007) (stating that "[i]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt" (quoting *Jackson*, 443 U.S. at 324)); *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial."). A criminal conviction will stand so long as "a reasonable mind 'might fairly conclude guilt beyond a reasonable doubt.'" *United States v. Strauss*, 999 F.2d 692, 696 (2d Cir. 1993) (quoting *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir. 1984) (internal quotation omitted)). Even when "faced with a record of historical facts that supports conflicting inferences [a court] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolves any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994) (quoting *Jackson*, 443 U.S. at 326).

A habeas petitioner cannot prevail on a claim of legally insufficient evidence unless he can show that, viewing the evidence in the light most favorable to the prosecution, "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Flowers v. Fisher*, 296 F. App'x 208, 210 (2d Cir. 2008) (quoting *Jackson*, 433 U.S. at 324). When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

In the instant case, petitioner argues that his convictions were not based on legally sufficient evidence. The Appellate Division rejected this claim on the merits, holding that, viewing the evidence in the light most favorable to the prosecution, the evidence "was legally sufficient to establish [Delston]'s guilt beyond a reasonable doubt" and that "the

---

[5] The state court also rejected petitioner's weight of the evidence claim on the merits. *Delston*, 818 N.Y.S.2d at 223.

15

verdict of guilt was not against the weight of the evidence." *Delston*, 818 N.Y.S. at 223. Therefore, AEDPA deference applies. For the reasons set forth below, the Court concludes that the Appellate Division's ruling was not contrary to, or an unreasonable application of, clearly established federal law. Nor was it an unreasonable determination of the facts.

Petitioner was convicted of criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree, and criminal possession of a controlled substance in the fifth degree. Under New York Penal Law § 220.39[1], "[a] person is guilty of criminal sale of a controlled substance in the third degree when he knowingly and unlawfully sells . . . a narcotic drug." Under New York Penal Law § 220.16[1], "[a] person is guilty of criminal possession of a controlled substance in the third degree when he knowingly and unlawfully possesses . . . a narcotic drug with intent to sell it." Under New York Penal Law § 220.06[5], "[a] person is guilty of criminal possession of a controlled substance in the fifth degree when he knowingly and unlawfully possesses . . . cocaine and said cocaine weighs five hundred milligrams or more."

The evidence against petitioner on all of the charged crimes was legally sufficient. First, there was ample evidence to support petitioner's conviction for the criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree. For instance, there was not only testimony from a police informant that petitioner sold drugs to her (Tr. 208-09, 255-59, 262), but also a videotape of the drug transaction that captured the crime as it occurred. According to the trial evidence, the videotape showed the informant approach Delston and say, "I'm only short a dollar," before she handed something to Delston as he simultaneously handed something to her. As noted above, even if their hands were not visible on the tape, petitioner did not dispute that the tape showed that the informant left the police, bought two cigarettes from a deli cashier, approached petitioner, and a transaction took place, after which the informant immediately returned to the police with the drugs. At trial, Officer Trimboli, Detective Mangiamele, and Detective Browne testified that the informant was searched before she left their presence and after she returned from the deli. (Tr. 268-69, 277-78, 291-93, 299-300, 345-46.) They also testified that the drugs sold by petitioner to Bussey were later tested by the Scientific Investigation Bureau and found to be crack cocaine. (Tr. 294-95, 308-310, 326.) Detective Jayson Pinksy conducted a thorough analysis of the two clear plastic Ziploc bags of drugs that the informant purchased from petitioner on November 19, 2002 and determined that the substance contained in the bags was cocaine. (Tr. 324-36.)

The evidence at trial also established sufficient evidence to uphold petitioner's conviction under New York Penal Law § 220.06[5] for criminal possession of a controlled substance in the fifth degree. Specifically, the prosecution presented substantial testimonial evidence that, while petitioner was being arrested for his sale to the informant, Detectives Mangiamele and Browne found that he was holding eight small bags of what appeared to be crack cocaine in his right hand. (Tr. 295-96, 346-47.) These bags were taken from petitioner incident to his arrest and, on December 11, 2002, Detective Timpano weighed the contents of the eight small Ziploc bags recovered. Detective Timpano performed additional tests on the contents of these bags, all of which gave a

16

positive indication for the presence of crack cocaine. (Tr. 333-35.) Detective Timpano thereafter determined that the bags contained 1,265 milligrams of pure cocaine. (Tr. 337.)

In sum, the Court concludes that the evidence was sufficient to convict petitioner beyond a reasonable doubt on all of the charged crimes. The Court, therefore, rejects petitioner's sufficiency of the evidence claim on the merits and concludes that the Appellate Division's ruling was not contrary to, or an unreasonable application of, clearly established federal law.

### IV. CONCLUSION

For the foregoing reasons, petitioner has demonstrated no basis for relief under 28 U.S.C. § 2254. Therefore, the petition for a writ of habeas corpus is denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: July 29, 2010
Central Islip, NY

\* \* \*

Petitioner is proceeding *pro se*. Respondent is represented by Kathleen M. Rice, District Attorney, Nassau County, by Cristin N. Connell and Tammy J. Smiley, Nassau County District Attorney's Office, 262 Old Country Road, Mineola, NY 11501.